**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Lane, | No. CV-22-00394-TUC-BGM |
| Plaintiff, | **ORDER** |
| v. | |
| City of Tucson, et al., | |
| Defendants. | |

Before the Court is Plaintiff Justin Lane's Motion for New Trial. (Doc. 150.) The motion has been fully briefed. (*See* Docs. 151, 152.) For the reasons that follow, Plaintiff's motion is denied.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed this action for monetary damages against the City of Tucson (City) and senior officers of the Tucson Police Department (TPD) alleging that Defendants unlawfully demoted him in retaliation for his protected speech and that he was denied liberty and property interests by his demotion. (Doc. 1-3 at 30-35.) Plaintiff's First Amendment retaliation claim against all Defendants and Fourteenth Amendment property interest claim against the City survived summary judgment and proceeded to trial. (Doc. 72 at 30.) Before the claims were submitted to the jury, the Court granted the City's Rule 50 motion on Plaintiff's property interest claim finding that Plaintiff failed to provide a legally sufficient evidentiary basis for a reasonable jury to conclude he had a protected property interest in his police captain assignment. (Doc. 127 at 1-2.) Plaintiff's First

1    Amendment retaliation claim went to the jury, which issued verdicts in Defendants' favor.
2    (Doc. 138 at 2.)  Plaintiff brings the motion at hand asserting the Court committed multiple
3    instances of reversible error that mandates a new trial on all his claims.  (Doc. 150.)  This
4    Order follows.

5                                      **LEGAL STANDARD**

6              A district court may grant a new trial only if the verdict is contrary to the clear
7    weight of the evidence or "it is quite clear that the jury has reached a seriously erroneous
8    result."  *Venegas v. Wagner*, 831 F.2d 1514, 1519 (9th Cir. 1987).  A court may also grant
9    a new trial based on erroneous jury instructions or the failure to give adequate instructions.
10   *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).  In considering a Rule
11   59 motion for new trial, the court "is not required to view the trial evidence in the light
12   most favorable to the verdict."  *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*,
13   762 F.3d 829, 842 (9th Cir. 2014).  Instead, the court can weigh the evidence, make
14   credibility determinations, and grant a new trial for any reason necessary to prevent a
15   miscarriage of justice.  *Id*.  Reversal of the district court's denial of a motion for new trial
16   is proper if the court "made a legal error in applying the standard for a new trial or if the
17   record contains no evidence in support of the verdict."  *Hemmings v. Tidyman's Inc.*, 285
18   F.3d 1174, 1189-90 (9th Cir. 2002).

19                                        **DISCUSSION**

20             Plaintiff raises five grounds for relief in his motion for new trial.  (Doc. 150 at 3-
21   17.)  He argues the Court erred by: (i) letting the jury decide whether his speech was made
22   as a private citizen; (ii) refusing to answer jury questions about the private citizen jury
23   instruction; (iii) granting Defendants' Rule 50 motion and denying his cross-motion; (iv)
24   denying him the right to present rebuttal testimony; and (v) denying his motion in limine
25   to deem the civil service commission's decision preclusive.  (*Id.*)  The Court addresses
26   each argument in the order raised.

27   **I.    Contested Question of Fact and Law Belongs to Jury**

28             Plaintiff first argues that the Court erred by letting the jury decide the private citizen

                                              - 2 -

component to the protected speech question.  (Doc. 150 at 3-5.)  The Court disagrees.

To establish a First Amendment retaliation claim, the plaintiff must prove that "he engaged in protected speech." *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 776 (9th Cir. 2022).  The protected speech question is comprised of two inquiries: (i) whether the plaintiff "spoke on a matter of public concern," and (ii) whether the plaintiff "spoke as a private citizen or public employee." *Id.* at 777 (citation omitted).

Whether the plaintiff spoke on a matter of public concern is a question of law for the court to decide. *Greisen v. Hanken*, 925 F.3d 1097, 1109 (9th Cir. 2019).  However, whether the plaintiff spoke as a private citizen or public employee is a mixed question of fact and law.  *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1129 (9th Cir. 2008).  "[T]he scope and content of a plaintiff's job responsibilities can and should be found by a trier of fact," but the "ultimate constitutional significance of the facts as found" is a question of law.  *Id.*  Mixed questions of fact and law have "typically been resolved by juries," *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 424 (2015), and "when there are genuine and material disputes as to the scope and content of [a] plaintiff's job responsibilities, the court must reserve judgment on [the private citizen] prong of the protected status inquiry until after the fact-finding process," *Posey*, 546 F.3d at 1131.

### A.    Summary Judgment Denial Lacks Preclusive Effect

To support his argument that the Court erred by letting the jury decide the private citizen inquiry, Plaintiff asserts the Court determined "as a matter of law" that his civil service commission testimony was provided as a private citizen and was protected in its summary judgment order.  (Doc. 150 at 3.)  Plaintiff argues that such a determination, combined with the Defendants' pretrial acquiescence of the matter, precludes the private citizen issue from being given to the jury.  (*Id.* at 3-5.)  Plaintiff's argument fails because Plaintiff never moved for summary judgment and a district court's summary judgment denial lacks preclusive effect.  *See Andrews Farms v. Calcot, Ltd.*, 693 F. Supp. 2d 1154, 1162 (E.D. Cal. 2010) (ruling that a summary judgment denial "does not establish findings of either fact or law" and that the plaintiffs could not rely on the court's summary judgment

order to establish their purported findings); *Dessar v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 353 F.2d 468, 470 (9th Cir. 1965) (instructing that [summary judgment] denial merely postpones decision of any question; it decides none.").

To be sure, in its denial of Defendants' summary judgment motion on the retaliation issue, the Court observed that Plaintiff's testimony "addressed matters of public concern and was provided as a private citizen and is protected." (Doc. 72 at 7.) However, the Court also ruled that it could not grant judgment as a matter of law to Defendants because there was "sufficient evidence in the record [to] demonstrate[ ] that [Plaintiff] was not testifying pursuant to his official duties when he appeared before the civil service commission on behalf of a terminated police officer." (*Id*. at 14.) The Court also reiterated that whether Plaintiff was demoted for unlawful retaliation was a "genuine issue[ ] of material fact for the jury to decide." (*Id*. at 29.) The Court concluded its order by declaring that Plaintiff's retaliation claim survived summary judgment because the Court believed Plaintiff's evidence and drew all justifiable inferences in his favor. (*Id*.)

The Court's summary judgment denial had no preclusive effect on a disputed question of fact and law that Plaintiff was required to prove at trial. *See Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) ("[T]he denial of a summary judgment motion is never law of the case because factual development of the case is still ongoing."); *Andrews Farms*, 693 F. Supp. 2d at 1165 (The "denial of a summary judgment motion has no preclusive effect, does not merge into a final judgment, and is an interlocutory, unappealable order that can be reviewed by the district court at any time before final judgment is entered."). The denial also failed to contain the legal determinations that Plaintiff contends it does. *See Progressive Gulf Ins. Co. v. Faehnrich*, 297 F. App'x 700, 701 (2008) (unpublished decision) (rejecting notion that a summary judgment denial is equivalent to a grant of summary judgment for the nonmoving party); *Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958, 968 (S.D. Cal. 2003) (ruling that statements contained in a summary judgment denial "do not necessarily bind [a district] [c]ourt's subsequent determinations"). As such, Plaintiff's argument that the Court erred by letting the jury decide the private citizen

inquiry because its summary judgment denial had preclusive effect is denied.

### B.     In Limine Ruling Lacks Preclusive Effect

In addition to arguing the Court erred by letting the jury decide the private citizen inquiry because the Court's summary judgment denial had preclusive effect, Plaintiff also argues the Court's decision was erroneous because Defendants conceded that the Court ruled in Plaintiff's favor on the matter in their response to one of Plaintiff's motions in limine.  (Doc. 150 at 3-5.)  This argument also fails.

A motion in limine is a procedural mechanism designed to limit testimony or evidence in a particular area prior to trial.  *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).  The court has the power to exclude evidence in limine "only when evidence is clearly inadmissible on all potential grounds."  *United States v. Tilotta*, 588 F. Supp. 3d 1058, 1060 (S.D. Cal. 2022).  "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."  *Id.*  However, "[d]enial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial."  *Mendoza v. Rio Rico Med. & Fire Dist.*, No. CV-18-00479, 2021 WL 5741446, at *1 (D. Ariz. Dec. 2, 2021) (citation omitted).  It "merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded."  *Id.* (citation omitted).  In limine rulings "are not binding on the trial judge, and the judge may always change his mind during the course of a trial."  *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

### 1.     Plaintiff Abandons In Limine Request

Months before trial, Plaintiff filed a motion in limine seeking to "preclude Defendants from presenting any evidence, eliciting any testimony, or raising any argument that contradicts the legal determinations" made by the Court in its summary judgment order.  (Doc. 81 at 1.)  Included in his motion was a request to preclude evidence that would contradict the alleged determination that Plaintiff's civil service commission testimony was provided as a private citizen.  (*Id.* at 1-2.)  The Court ultimately denied the request as moot

because Defendants failed to oppose the request and asserted they would not be arguing the issue to the jury. (*See* Docs. 95 at 2; 107 at 11.)

Despite Defendants' initial concession of the matter, Plaintiff abandoned his request seven days before trial. (*See* Doc. 149 at 26-27.) Instead, Plaintiff acquiesced to letting the jury decide the private citizen inquiry by failing to object to a jury instruction on the matter and proposing his own version of the instruction for the Court's consideration. (*See* Docs. 106 at 50-52; 149 at 26-27.) In addition to abandoning his request and proposing his own version of the private citizen instruction, Plaintiff waited until after the close of evidence and the Court's Rule 50 ruling to object to the fact that the private citizen inquiry would be left to the jury. (*See* Doc. 145 at 34-37.) In denying his objection, the Court rejected Plaintiff's contention that the private citizen inquiry had already been determined as a matter of law prior to trial. (*Id*. at 37.) The Court correctly recalled that there was agreement between the parties on the public concern issue but that a factual question remained as to whether Plaintiff's speech was made as a private citizen or public employee. (*Id*. at 37:8-12; *see also* Docs. 80 at 9-10; 106 at 50-53; 149 at 26-28.) The Court therefore ruled that the private citizen jury instruction would be given. (Doc. 145 at 37:11-12.)

As mentioned above, the Court's summary judgment denial failed to include a legal determination that Plaintiff spoke as a private citizen as a matter of law. Defendants' position change on the matter did not prejudice Plaintiff because Plaintiff acquiesced to the fact when he proposed his own version of the private citizen jury instruction seven days before trial. (*See* Doc. 106 at 50-52.) To the extent the Court altered its in limine ruling months after the fact and in light of Plaintiff's abandonment of the issue, it was well within its discretion to do so. *See Ohler*, 529 U.S. at 758 n.3 (2000) ("[*I*]*n limine* rulings are not binding on the trial judge, and [he] may always change his mind during the course of a trial."); *City of L.A. Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("[A district court] possesses the inherent procedural power to reconsider, *rescind,* or modify an interlocutory order for cause."). Plaintiff's new argument on the matter,

1    raised for the first time in his reply, is waived.[1]  *See Zamani v. Carnes*, 491 F.3d 990, 997

2    (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in

3    a reply brief.").  As such, Plaintiff's claim that the Court erred by letting the jury decide

4    the private citizen inquiry despite its in limine ruling on the matter is denied.

5    **II.    Jury Instruction Not Erroneous**

6         Plaintiff next argues the private citizen jury instruction itself was prejudicial as was

7    the Court's response to juror questions about it.  (Doc. 150 at 6-8.)  The Court disagrees.

8         "[A] trial court has broad discretion in formulating jury instructions."  *Hasbrouck*

9    *v. Texaco, Inc.*, 842 F.2d 1034, 1044 (9th Cir. 1987).  "A party seeking to alter a judgment

10   based on erroneous jury instructions must establish that those instructions were legally

11   erroneous[ ] and that the errors had prejudicial effect."  *Droplets, Inc. v. Yahoo! Inc.*, 658

12   F. Supp. 3d 754, 770 (N.D. Cal. 2023); *see also Millea v. Metro-N. R. Co.*, 658 F.3d 154,

13   163 (2d Cir. 2011) ("To justify a new trial, a jury instruction must be both erroneous and

14   prejudicial.").  To avoid error, the instructions must be formulated "so that they fairly and

15   adequately cover the issues presented, correctly state the law, and are not misleading."

16   *Brewer v. City of Napa*, 210 F.3d 1093, 1097 (9th Cir. 2000).  An error in jury instructions

17   does not require reversal "if it is more probable than not that the error was harmless."

18   *Jenkins v. Union Pac. R. Co.*, 22 F.3d 206, 210 (9th Cir. 1994).

19        Plaintiff brings his prejudicial jury instruction argument repeating his assertion that

20   it was erroneous for the Court to let the jury decide the private citizen issue.  (Doc. 150 at

21   6.)  Plaintiff argues that in doing so, he was required to prove an unnecessary element to

22   the jury.  (*Id*.)  Plaintiff also contends that there were no disputes about the scope of his

23   duties or three of the four factors listed in the private citizen jury instruction at trial.  (*Id*.)

24   Plaintiff concludes his argument by asserting the Court provided a non-responsive answer

25   to juror questions about the instruction and that the Court erred by rejecting his proposed

26   instruction on the private citizen issue.  (*Id*. at 7-8.)  These arguments fail.

27

28   _____

[1] Plaintiff argues for the first time in his reply that "[t]here were no disputed facts relevant to the private citizen question at summary judgment or trial."  (Doc. 152 at 2.)

**A.      Instruction Fairly and Correctly Covered Substantive Law**

The private citizen jury instruction in question fairly and adequately covered the issues presented, correctly stated the law, and was not misleading.  (*See* Doc. 129 at 12.) The instruction, which mirrored Ninth Circuit Model Civil Jury Instruction 9.10, included the recommended factors to the private citizen inquiry and closely followed the guidance outlined in *Dahlia v. Rodriguez*, 735 F.3d 1060, 1074-75 (9th Cir. 2013).  Plaintiff was not required to prove an unnecessary element at trial because the mixed question of whether he testified as a private citizen was genuinely and materially disputed at trial and properly given to the trier of fact.  (*See* Docs. 80 at 9-10; 106 at 50-53; 145 at 37:8-12); *Greisen*, 925 F.3d at 1111 (cleaned up) ("In a First Amendment retaliation case, the plaintiff also bears the burden of showing the speech was spoken in the capacity of a private citizen and not a public employee."); *United States v. Gaudin*, 515 U.S. 506, 506 (1995) ("[T]he jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion.").  The Ninth Circuit has affirmed the practice of letting the jury determine the private citizen inquiry when district courts have confronted similar scenarios at trial.  *See, e.g., Greisen*, 925 F.3d at 1111 (ruling that every *Dahlia* factor favored the jury's conclusion that the plaintiff spoke as a private citizen).

Here, the Court gave a private citizen instruction that was identical to the Model Civil Jury Instruction on the matter.  (*See* Doc. 129 at 12.)  The instruction broke down the private citizen inquiry into four main factors: (1) whether the plaintiff confined his communications to his chain of command; (2) whether the subject matter of the communication was within the plaintiff's job duties; (3) whether the plaintiff spoke in direct contravention to his supervisor's orders; and (4) whether the subject matter of the plaintiff's communication was about broad concerns over corruption or systemic abuse beyond the specific department, agency, or office where the plaintiff worked.  (*Id*.)  This instruction is nearly identical to the instruction given in *Greisen v. Hanken*, 252 F. Supp. 3d 1042 (D. Or. 2017), an analogous First Amendment retaliation case that was affirmed on appeal.  *See* Final Jury Instructions, Greisen v. Hanken et al., No. 3:14-cv-1399-SI

(D. Or. July 21, 2016), ECF No. 105 at 13-14.  The given instruction was not erroneous.

## B.     Proposed Instruction Misstates Law

In addition to giving an instruction that fairly and correctly covered substantive law, the Court properly rejected Plaintiff's proposed instruction because it misstated the law.

While a party is entitled to an instruction about his theory of the case "if it is supported by law and has foundation in the evidence," *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002), a court is not required to "incorporate every proposition of law suggested by counsel or amplify an instruction if the instructions as given allowed the jury to determine intelligently the issues presented," *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 726 F.2d 1381, 1398 (9th Cir. 1984).  Prior to trial, Plaintiff proposed a private citizen instruction that misstated the law and amplified an already complex inquiry.

As previously explained, Plaintiff abandoned his objection to having the jury decide the private citizen issue when he acquiesced to a jury instruction on the matter and proposed his own version of the instruction.  Plaintiff's proposed instruction, however, added an additional factor to the private citizen inquiry that misstated the law.  (*See* Doc. 106 at 50-51.)  The additional factor asked:

> Was the speech truthful testimony under oath? If so, then the speech may fall outside the plaintiff's official duties, even if the testimony related to his public employment or concerns information learned during that employment, notwithstanding any separate obligation Plaintiff may owe to his employer, such as showing up to court dressed in uniform. If not, then such speech may fall outside of the plaintiff's official duties.

(*Id.* at 51.)   While the other private citizen factors centered on determining whether Plaintiff's testimony was given as part of his official job duties, Plaintiff's proposed factor conflated the Supreme Court's holding in *Lane v. Franks*, 573 U.S. 228 (2014).

In *Lane*, the issue of whether the plaintiff's testimony was given outside his ordinary job duties was undisputed.  *See* 573 U.S. at 238 n.4 ("It is undisputed that Lane's ordinary job responsibilities did not include testifying in court proceedings.").  As such, the Court

1    concluded that "[t]ruthful testimony under oath by a public employee outside the scope of
2    his ordinary job duties is speech as a citizen for First Amendment purposes." *Id.* at 238.
3    However, the Court declined to address whether truthful testimony under oath by a public
4    employee within the scope of his ordinary job duties was automatically entitled to
5    constitutional protection. *See*, 573 U.S. at 238 n.4 ("We accordingly need not address in
6    this case whether truthful sworn testimony would constitute citizen speech under *Garcetti*
7    when given as part of a public employee's ordinary job duties."). Nowhere did the Court
8    conclude that since the plaintiff testified truthfully under oath, he was testifying outside the
9    scope of his ordinary job duties. *See*, 573 U.S. at 231-47. As such, Plaintiff's proposed
10   jury instruction misstated the law and was correctly rejected. *See Wall Data Inc. v. Los
11   Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769, 784 (9th Cir. 2006) (affirming district court's
12   rejection of proposed jury instructions that were "slanted or argumentative one way or the
13   other and were not appropriate or were confusing to the jury"); *Mannion v. Ameri-Can
14   Freight Sys. Inc.*, No. CV-17-03262, 2020 WL 417492, at *5 (D. Ariz. Jan. 27, 2020)
15   (rejecting plaintiffs' proposed jury instruction because it "misstated the law.").

16          **C.    Genuine And Material Dispute Over Private Citizen Issue**

17          The Court also correctly left the private citizen determination to the providence of
18   the jury because there was a genuine and material dispute over whether Plaintiff testified
19   as a private citizen or within the scope of his official job duties as a TPD captain at trial.

20          At trial, Plaintiff testified that he proactively contacted Anaya's attorney to inform
21   the attorney that the TPD misapplied its own policy in its investigation of the incident.
22   Plaintiff testified that he also informed the attorney that the department inappropriately
23   fired Anaya as a result of a policy misapplication and that the TPD did not consider the
24   totality of the circumstances in its decision. Plaintiff testified that he told the attorney that
25   he wanted to make sure the attorney was aware that Plaintiff authored a report on the
26   matter, which explained Plaintiff's position. Plaintiff also testified that he met with the
27   attorney at a local restaurant and explained to him the facts of the case and why Plaintiff
28   came to his findings. Plaintiff stated that he offered to testify in front of the commission

on Anaya's behalf and that Anaya's attorney requested his attendance through the City. Plaintiff asserted that he testified for three hours and that the commission found that the Anaya shooting was within policy and that it reinstated Anaya.

On cross-examination, Plaintiff agreed that he was tasked with reviewing the Anaya investigation around April 2020.  Plaintiff testified that he was presented with his personnel report and memorandum at the hearing and testified about his opinions in those documents. Plaintiff agreed that before he testified, he provided the commission with his background and experience as a TPD officer.  Plaintiff recalled that he testified that the TPD misapplied its policy, mischaracterized Anaya's statement at the time, and ignored the totality of the circumstances standard.  Plaintiff then clarified that he testified that the Office of Professional Standards (OPS), a separate entity within the TPD, had made the investigating errors and not the department as a whole.  Plaintiff explained that he was not advocating that the TPD change its use-of-force policy.  Plaintiff agreed that he was simply telling the commission that he disagreed with the OPS's application of the use-of-force policy. Plaintiff read aloud the commission's conclusion and agreed with defense counsel that the conclusion did not say anything about a violation of the use-of-force policy.

During Plaintiff's closing argument, Plaintiff reminded the jury how it heard evidence about his unwillingness to yield to political whims and provide testimony that went against his opinion that Anaya was wrongfully terminated.  Plaintiff argued that despite the fact that six officers testified against him at the commission hearing, his opinion was vindicated by the commission's decision reinstating Anaya.  Plaintiff recounted how the then chief of police offered Plaintiff's upcoming civil service commission testimony as one of the reasons for his demotion.  Plaintiff argued that the defense's assertion that he testified as part of his official job duties should not be taken seriously because he went out of his way to vindicate Anaya and "buck the chain of command."

During Defendants' closing argument, they reminded the jury that it was Plaintiff's burden to prove that he testified as a private citizen as opposed to a public employee and asserted that Plaintiff testified in his official capacity as a TPD member at the hearing.  To

support their argument, Defendants referenced TPD internal policies requiring officers to testify at civil service commission hearings; an internal memorandum that instructed Plaintiff to testify at the hearing and to contact the terminated officer's attorney if he had questions; and the fact that Plaintiff testified in uniform and was paid for his time testifying. Defendants also argued that Plaintiff failed to offer evidence demonstrating he testified about any broad concerns over corruption or systemic abuse; that his main focus was to testify about his opinion concerning one police officer's actions; that his testimony was based upon his experience, knowledge, and skills as a TPD member; and that his speech was consistent with his memoranda and reports on the issue, which were provided as part of his official duties as a police captain.

As such, Plaintiff's contentions that there was "no dispute about the scope of [his] duties" and that there was "no reasonable dispute about at least three of the four factors listed in the private citizen instruction" at trial, (*see* Doc. 150 at 6), are meritless, and any arguments upon which they are based are denied.

**D.    Answer Referring To Prior Instructions Within Discretion**

Finally, Plaintiff's argument that the Court erred by giving non-responsive and prejudicial answers to jury questions about the private citizen instruction is unavailing.

In *Crowley v. Epicept Corp.*, 883 F.3d 739, 750-51 (9th Cir. 2018), the Ninth Circuit provided guidance about answers to jury questions. It instructed:

> Because the jury may not enlist the court as its partner in the factfinding process, the trial judge must proceed circumspectly in responding to inquiries from the jury. Often the most prudent approach, under such circumstances, is to frame responses in terms of supplemental instructions rather than following precisely the form of question asked by the jury. When the jury's question does not indicate that the jurors were affirmatively interpreting the law incorrectly, and the court's original instructions provide a correct statement of the law and generally address the jury's question, a district court acts within its discretion by simply referring the jury to the instructions they had already been given.

*Id.* (cleaned up).

During deliberation, the jury submitted the following questions to the Court: (1) "[d]oes speaking with Anaya[']s lawyer break the communications chain of command[;]" and (2) "[w]ho is considered chain of command?  What does 'confine' mean?  If he spoke to anyone outside the chain of command?  Clarify what confine means in relation to question 1." (Doc. 137 at 2.)  The Court provided the same answer to both questions.  (*Id.* at 3.)  It instructed: "[y]ou should review the final jury instructions and discuss your recollection of the testimony of the witnesses and if helpful review any notes you have taken during the trial." (*Id.*)

This answer was well within the Court's discretion because the jury's questions failed to indicate that jurors were affirmatively misinterpreting the law, the original instructions provided correct statements of the law, and the jury's questions went to the heart of factual matters meant for it to determine.  It was Plaintiff's burden to prove his speech was made outside of his chain of command.  It would have been inappropriate for the Court to act as the jury's partner in its factfinding mission by affirmatively answering the questions as Plaintiff requested.  (*See* Doc. 146 at 53: 13; 54: 8-10.)  Instead, the Court referred the jury to the instructions they had already been given and instructed them to discuss their recollection of the testimony of the witnesses and to review any notes they had taken during trial.  (Doc. 137 at 3.)  Such answers are well within the Court's wide discretion and are not erroneous.  *See Arizona v. Johnson*, 351 F.3d 988, 994 (9th Cir. 2003) (ruling that trial judge's "wide discretion" carries over to jury question responses).  Plaintiff's argument that the Court erred by giving non-responsive and prejudicial answers to the jury is therefore denied.

### III.    Rule 50(a) Motion Properly Granted

Plaintiff next argues that the Court erred by granting Defendants' Rule 50 motion on his protected property interest claim.  (Doc. 150 at 8-14.)  The Court disagrees.

When a case proceeds to trial, there are material issues of fact for a factfinder to resolve.  *Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 929 (9th Cir. 2007).  Rule 50(a) "allows a court to remove issues—claims, defenses, or entire cases—from the jury when

there is no legally sufficient evidentiary basis to support a particular outcome." *Id*. at 926 (cleaned up). "In other words, a motion for a judgment as a matter of law is properly granted only if no reasonable juror could find in the [nonmovant's] favor." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008) (cleaned up). When evaluating a Rule 50 motion, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn" in that party's favor. *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000). Nevertheless, reasonable inferences cannot be supported by "conclusory statements instead of significant probative evidence," *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 802 (9th Cir. 2009) (cleaned up), and "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The trial court may grant a Rule 50 motion only if it "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[;] that is, if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017) (cleaned up). "[D]istrict courts evaluate Rule 50(a) motions in light of the trial record rather than the discovery record." *Dupree v. Younger*, 598 U.S. 729, 731-32 (2023).

## A.    Procedural History of Rule 50(a) Motion

At trial, after both parties presented their cases in chief, and before the matter was submitted to the jury, Defendants filed a Rule 50(a) motion for judgment as a matter of law and Plaintiff filed a response and cross-motion for judgment as a matter of law. (Docs. 124, 125.) Defendants asserted they were entitled to judgment as a matter of law on Plaintiff's property interest claim because Plaintiff "lack[ed] a legitimate property interest in [his] [police] captain assignment" and that "no unlawful deprivation" occurred. (Doc. 124 at 7.) Plaintiff responded that he was entitled to judgment as a matter of law because none of the exhibits cited by Defendants, nor any of the testimony at trial, established that the police captain position fell outside the classified service. (Doc. 125 at 1-2.) To the extent there was such evidence, Plaintiff argued that the Arizona Peace Officer's Bill of

1  Rights (POBR), A.R.S. §§ 38-1101-1115, set the minimum rights due to a police officer

2  and prohibited disciplinary action without just cause.  (*Id*. at 2.)  Plaintiff also argued that

3  the plain terms of the statute demonstrated he was disciplined without just cause.  (*Id*.)

4      At oral argument on the parties' motions, Plaintiff argued that the City's evidence

5  failed to establish that his captain position was exempt from the classified service and that

6  the POBR created a property interest in his police captain assignment.  (Doc. 145 at 27-

7  28.)  When confronted by the Court with the fact that there was not "a shred of evidence"

8  presented at trial about the POBR, Plaintiff asserted that the matter was an issue of legal

9  interpretation and that it was for the Court to decide if the statute applied to all peace

10  officers.  (*Id*. at 28-29.)  When pressed again on the sufficiency of evidence issue, Plaintiff

11  conceded, "[i]f there's any jury question about it, it's about whether or not [plaintiff's]

12  demotion qualified as disciplinary action and whether or not he had just cause as they are

13  defined by statute."  (Doc. 145 at 29:5-8.)  In granting the City judgment as a matter of law

14  on the matter, the Court concluded, in pertinent part:

16      Defendants' motion as it concerns Plaintiff's Fourteenth Amendment due
       process claim is granted. Under Federal Rule of Civil Procedure 50, a party

17      may be entitled to judgment as a matter of law if the opposing party has been
       fully heard on an issue during trial and the Court finds that a reasonable jury

18      would not have a legally sufficient evidentiary basis to find for the party on
       that issue. In such a scenario, the Court may resolve the issue against the

19      party and grant a motion for judgment as a matter of law against the party on
       a claim that, under controlling law, can be maintained only with a favorable

20      finding on that issue. To prevail on a section 1983 Fourteenth Amendment
       procedural due process claim against the City of Tucson, Plaintiff must

21      prove, by a preponderance of the evidence, that: (i) he had a protected
       property interest in his police captain assignment; (ii) the City of Tucson

22      deprived him of that interest; and (iii) he was denied adequate procedural
       protection in the deprivation of that interest. The Court finds that Plaintiff

23      has failed to provide a legally sufficient evidentiary basis for a reasonable
       jury to conclude that he had a protected property interest in his police captain

24      assignment.

25

26

27

28  (Doc. 127 at 1-2) (internal citations omitted).

### B.    Plaintiff's Arguments Unavailing

Plaintiff now argues that the Court erred in granting Defendants' Rule 50(a) motion because Due Process protections are created by state law and the POBR, City charter, and City code establish a protected property right in his police captain assignment.  (Doc. 150 at 9.)   Plaintiff asserts that the Court reached this "legal conclusion" in its summary judgment denial and that the reversal of the Court's ruling was error.  (*Id.*)  Plaintiff's argument is inaccurate and unavailing.

#### 1.    Plaintiff Misrepresents Summary Judgment Denial

To begin, the Court never concluded that the POBR or the City's charter or code created a protected property interest in Plaintiff's police captain assignment.  (*See* Doc. 72 at 16-18.)  To the contrary, the Court ruled that there was "sufficient evidence in the record to create a genuine issue of material fact as to whether [Plaintiff] was deprived of a protected property interest in his police captain position."  (*Id.* at 17.)  The Court went on to observe that "[i]n addition to the existence of a genuine issue of material fact on the first element of a property interest claim," Defendants failed to provide convincing arguments demonstrating Plaintiff was an at-will employee.  (*Id.* at 18.)  In a separate but related portion of its ruling, the Court concluded that it was "not clear" whether the POBR created a "protected property interest in continued employment at a specific position within a municipal police department," and that Plaintiff failed "to reference any case law that reinforces his alleged property interest in continued employment."  (*Id.* at 26.)  As such, Plaintiff's attempt to convert the Court's summary judgment denial into a preclusive ruling in his favor is denied.

#### 2.    Plaintiff Fails To Offer Evidence At Trial

Even assuming it was the Court's responsibility to determine whether Plaintiff had a protected property interest in his police captain assignment as a matter of law at trial, the Court could not make that determination because Plaintiff failed to present *any* evidence that the POBR existed, that the statute applied to him, and that its provisions created a protected property interest in his police captain assignment.  The Court confronted Plaintiff

with this fact at oral argument on the parties' Rule 50 motions.  (*See* Doc. 145 at 28 (explaining that "there's not a shred of evidence" that the POBR applies to Plaintiff's case; that the statute is "not in evidence;" and that it "was never discussed by anyone.")  Plaintiff responded that the matter was a purely legal issue for the Court to decide and that Defendants failed to proffer sufficient evidence to demonstrate that his position was exempt from the City's civil service rules.  (*Id*. at 27-29.)

To the extent the Court could decide the protected property issue as a matter of law at trial, Plaintiff still needed to adduce sufficient evidence for the Court to make that determination.  Other district courts in this circuit have allowed the protected property right issue to proceed to trial when disputed issues of fact precluded the court from making the legal determination prior to trial.  *See, e.g., Fielder v. Gehring*, 110 F. Supp. 2d 1312, 1319 (D. Haw. 2000) (denying state officials summary judgment because "an issue of fact" existed that prevented the court "from determining whether [the plaintiff] had a property interest in the mooring permit protected by the Due Process clause.").  The Court could not make the protected property right determination prior to trial because Plaintiff failed to move for summary judgment on the matter and the issue involved disputed material facts. (*See* Doc. 72 at 17.)  The Court could not make the protected property right determination at trial because it was precluded from using the summary judgment record and Plaintiff failed to provide evidence upon which the Court or jury could rule in his favor.  *See Ortiz v. Jordan*, 562 U.S. 180, 184 (2011) ("[T]he full record developed in court supersedes the record existing at the time of the summary-judgment motion."); *Peralta*, 744 F.3d at 1088 ("[W]hen considering whether to grant judgment as a matter of law, [district courts] look only at the evidence actually introduced at trial.").

Finally, as written, Arizona's POBR, on which Plaintiff relied for the creation of his protected property interest, would still have required disputed issues of material fact to be decided by the jury before the Court could rule on the issue as a matter of law.  (*See* Doc. 80 at 31-33.)  Those issues were whether Plaintiff was covered under the Act as a lieutenant appointed to a captain assignment, whether Plaintiff suffered "disciplinary action" by being

reassigned, and whether there was "just cause" for his reassignment. (*See id.*; A.R.S. §38-1101.) In the parties' joint pretrial order, Plaintiff agreed that his "reassignment was not a disciplinary action," (*see* Doc. 80 at 5), which calls into question whether he would have been able to contest the undisputed material fact at trial. *See United States v. First Nat. Bank of Circle*, 652 F.2d 882, 886 (9th Cir. 1981) (instructing that a party may not offer evidence or advance theories at trial "which are not included in the[pretrial] order or which contradict its terms"). As such, Plaintiff's failure to adduce evidence at trial of the POBR was dispositive of his protected property interest claim.

### 3. Lack Of Evidence Fails to Demonstrate Protected Interest

Finally, Plaintiff's argument that Defendants' evidence fails to demonstrate that he was not a member of the City's classified service does not satisfy Plaintiff's burden to prove that he had a constitutionally protected property interest in his position. *See Miller v. Deschutes Valley Water Dist.*, 663 F. Supp. 2d 1001, 1008 (D. Or. 2009) (ruling that the plaintiff's mere assertion that a tenured civil servant has a constitutionally protected property interest was insufficient to establish the interest without reference to the statute or rule that established such a right). Even viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the City civil service rules and regulations evidence proffered at trial called into question whether Plaintiff's captain assignment was entitled to civil service protection. (*See, e.g.*, Defs.' Ex. 124 at 28.[2]) Additionally, on cross-examination, Plaintiff agreed that his captain position was a police lieutenant assignment and that he was assigned to be a captain by the chief of police. Plaintiff also conceded that the civil service rules and regulations evidence, which arguably demonstrated his police captain assignment was not entitled to civil service protection, could apply to his position. Finally, as previously explained, Plaintiff failed to introduce evidence at trial that a state statutory right somehow supplanted the City's civil service

---

[2] Provision (B) of Section 6 Assignment Positions provides: "An appointing officer may, in his or her sole discretion, appoint any employee within a particular classification to an assignment position within that classification. Appointments to assignment positions may be terminated by the appointing officer at any time without just cause[.]"

1    rules and regulations that called into question his civil service protection.  *Cf. Brady v.*
2    *Gebbie*, 859 F.2d 1543, 1548 (9th Cir. 1988) ("[Plaintiff] therefore could only have a
3    property interest in his job as State Medical Examiner if Oregon law created such a right.").
4    Plaintiff's argument that he established a protected interest in his captain assignment by
5    Defendants' alleged failure to disprove his civil service protection is therefore denied.

6    **IV.    Rebuttal Testimony Unwarranted**

7    Plaintiff next argues that the Court erred in failing to grant him the right to present
8    rebuttal evidence.  (Doc. 150 at 14-15.)  The Court disagrees.

9    The district court "has broad discretion in deciding what constitutes proper rebuttal
10   evidence."  *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597,
11   601 (9th Cir. 1991).  "Rebuttal evidence is allowed to permit a litigant to counter new,
12   unfor[e]seen facts brought out in the other side's case."  *Daly v. Far E. Shipping Co. PLC.*,
13   238 F. Supp. 2d 1231, 1238 (W.D. Wash. 2003) (internal quotation marks and citation
14   omitted).  It is admissible only where the need for it could not have been foreseen at the
15   time the plaintiff presented his case-in-chief.  *Id*.  "When a party knows that a contested
16   matter is in the case, yet fails to address it in a timely fashion, he scarcely can be heard to
17   complain that the trial court refused to give him a second nibble at the cherry."  *Id*.

18   **A.    Rebuttal Evidence Addressed At Trial**

19   At trial, the Court altered the scope of cross-examination to permit inquiry into
20   matters as if on direct examination because the parties agreed to the arrangement due to the
21   limited availability of certain witnesses.[3]  (*See* Doc. 150 at 14:12-20.)  Under the agreed-
22   upon scenario, Defendants would be able to conduct direct examination of some of
23   Plaintiff's witnesses during their cross-examination of the witnesses.

24   The issue of whether Plaintiff could call himself as a rebuttal witness was raised
25   outside the presence of the jury after the parties asserted they intended to rest their cases-
26   in-chief.  (*See* Doc. 145 at 4-7.)  Defendants called only one witness, John Carlson, during

27
28   [3] Trial judges enjoy broad discretion to determine the order in which parties adduce proof, the scope of examination of witnesses, and whether to allow cumulative, repetitive, or irrelevant testimony.  *Geders v. United States*, 425 U.S. 80, 86-87 (1976).

their case-in-chief. (*See* Doc. 122.) When asked to explain the rebuttal testimony issue, Plaintiff asserted that since the Court altered the scope of cross-examination to permit inquiry into additional matters as if on direct examination, Defendants elicited testimony from some of Plaintiff's witnesses that contradicted his own testimony. (Doc. 145 at 6.) Plaintiff specifically argued that he wanted to address two areas that came up during Defendant Magnus' testimony that had not been previously discussed. (*Id.* at 7.) Those areas were: (i) Plaintiff's outreach effort towards marginalized communities; and (ii) arrest deferral programs. (*Id.*) In denying Plaintiff's request to call himself as a rebuttal witness, the Court ruled that if matters were raised on cross-examination with which Plaintiff disagreed, he had every opportunity to redirect the witness in his case-in-chief. (*Id.*) The Court ruled it was therefore not going to allow any rebuttal unless it involved John Carlon's testimony. (*Id.*)

### B.    Rebuttal Testimony Denial Within Court's Discretion

Plaintiff now argues the Court's rebuttal ruling was erroneous because "re-directing an adverse witness" is insufficient "particularly when their testimony is contrary to what [Plaintiff] would have said on rebuttal." (Doc. 150 at 14.) Plaintiff contends he was prejudiced by the ruling because he was precluded from addressing undisclosed issues that went beyond the scope of his direct examination. (*Id.* at 15.) Plaintiff's argument fails.

### 1.    Plaintiff Misrepresents Trial Evidence

Plaintiff's argument is unsuccessful because the record indicates that it was *Plaintiff* who raised the issues that he sought to rebut with his repeat appearance at trial. On the fifth day of trial, former police chief Magnus testified on direct examination that Plaintiff "was not someone who was very open to doing things in a different way or having his opinion changed on things, which is problematic for a leader." When questioned by Plaintiff's counsel if he could provide specific examples that gave him that impression, Magnus responded, "we had talked about the need to engage more with the community, particularly communities that are often under representative -- under represented or female marginalized that don't always have the best relationship with police." Magnus addressed

alternatives to arrest in the same colloquy.  He testified, "[s]o there need to be alternatives to arrest.  And officers need to learn that they have more tools than just making an arrest.  An arrest is certainly appropriate under many circumstances …. But being open to the idea that there are circumstances where things could be handled differently was something we certainly talked about as ELT and that was shared with the captains."

Plaintiff was also aware of Magnus' community engagement criticism because it was included in Plaintiff's August 10, 2020 performance evaluation.  (*See* Defs.' Ex. 104 at 3 ("I remain unimpressed with the level of community engagement by ODE command staff, who appear to put little effort into engagement or in recognizing the importance of building relationships with … marginalized neighborhoods, or in implementing creative ways to develop those relationships.").).  Plaintiff was so aware of the criticism that he called his own witness, Teresa Olson Smith, chief of staff for the Ward Four City Council Office, to testify at length about how Plaintiff was engaged with the portion of the City he was assigned to oversee as a police captain.  (*See* Doc. 122.)  As such, Plaintiff's contention that the Court erred by denying him the opportunity to rebut evidence that he himself elicited via direct examination at trial and that was properly disclosed is denied.  *See Daly*, 238 F. Supp. 2d at 1238 ("Rebuttal evidence is admissible only where the need for it could not have been foreseen at the time the plaintiff presented its case-in-chief.").  To the extent Plaintiff wanted the final word on the matter, he could have chosen to testify last in his case-in-chief instead of requesting to present himself as a rebuttal witness at trial.  *See Brutsche v. City of Fed. Way*, 300 F. App'x 552, 553 (9th Cir. 2008) (citation omitted) ("[R]ebuttal evidence may not be offered merely to bolster the plaintiff's case-in-chief.").

## V.  Collateral Estoppel Unavailable

Lastly, Plaintiff argues the Court erred by denying his motion in limine to preclude Defendants from introducing evidence or raising arguments at trial that contradicted the civil service commission's decision that "Anaya's use of force was within policy."  (Doc. 150 at 16.)  Plaintiff asserts the commission's decision is precluded from relitigation under the doctrine of collateral estoppel.  (*Id.* at 15-16.)  The Court disagrees.

1    "Issue preclusion, or collateral estoppel, precludes relitigation of an issue already

2    litigated and determined in a previous proceeding between the same parties." *Pike v.*

3    *Hester*, 891 F.3d 1131, 1138 (9th Cir. 2018).  However, whether a state administrative

4    agency's decision has preclusive effect in a § 1983 case involves a detailed, two-step

5    inquiry. *Jamgotchian v. Ferraro*, 93 F.4th 1150, 1154 (9th Cir. 2024).  The first step is to

6    "determine whether the state administrative proceeding was conducted with sufficient

7    safeguards to be equated with a state court judgment."[4] *Plaine v. McCabe*, 797 F.2d 713,

8    719 (9th Cir. 1986).  The second step is to "determine if, under state law, the agency's

9    decision would be given preclusive effect." *Jamgotchian*, 93 F.4th at 1154 (cleaned up).

10    In Arizona, for issue preclusion to apply, the moving party must demonstrate that:

11    "(1) [t]he issue at stake is the same in both proceedings; (2) the issue was actually litigated

12    and determined in a valid and final judgment issued by a tribunal with competent

13    jurisdiction; (3) the opposing party had a full and fair opportunity to litigate the issue and

14    actually did so; and (4) the issue was essential to the judgment." *Legacy Found. Action*

15    *Fund v. Citizens Clean Elections Comm'n*, 524 P.3d 1141, 1148 (Ariz. 2023).  "[U]nder

16    Arizona law, collateral estoppel only applies when an issue to be decided in a proceeding

17    is 'identical' to one decided in a prior proceeding." *Bollfrass v. City of Phoenix*, No. 22-

18    16485, 2024 WL 3272921, at *2 n.3 (9th Cir. July 2, 2024) (citing *Crosby-Garbotz v. Fell*,

19    434 P.3d 143, 146 (Ariz. 2019)).

20    **A.    In Limine Ruling Within Discretion**

21    Plaintiff brings the argument at hand asserting the Court erred in denying his motion

22    in limine concerning the civil service commission's decision in the Anaya appeal.  (Doc.

23    150 at 17.)  The Court's in limine ruling, however, was well within the Court's discretion.

24    Prior to trial, Plaintiff filed a motion in limine requesting that the Court preclude

25    Defendants from introducing any evidence or raising any arguments that contradicted the

26    civil service commission's decision that "[his] application of [the] TPD's use of force

---

27  |
28  | [4] This step involves evaluating the proceeding under the fairness requirements outlined in *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 422 (1966). *Jamgotchian*, 93 F.4th at 1154.

1    policy was correct." (Doc. 83 at 1-2.)  In denying Plaintiff's request, the Court ruled:

2

3         My plan is to deny that. To the extent that that may or may not be relevant I
4         think is up to you guys to decide. I think there are facts -- I don't think I can
          particularly, specifically preclude the city and the city defendants from
5         talking about it or you even talking about it. I think, frankly, you need to tell
          the jury what happened, why and how it impacts [Plaintiff's] claim. So I'm
6         going to deny it. But, [defense counsel], I would ask, keep that in mind. I
          mean, I don't think the jury needs to know everything about Officer Anaya's
7         claim other than how it may relate to [Plaintiff's] claim in this case.

8

9    (Doc. 107 at 19.)

10        Plaintiff now argues that the Court's denial of his motion in limine impermissibly

11   allowed the City to argue that his interpretation of the TPD's use-of-force policy was

12   outdated.  (Doc. 150 at 17.)  But the Court's denial of Plaintiff's motion was within its

13   discretion because whether his application of the TPD's use-of-force policy was correct

14   was irrelevant to the constitutional issues before the Court.  *See United States v. Alvarez*,

15   358 F.3d 1194, 1205 (9th Cir. 2004) (cleaned up) ("Trial judges have wide discretion in

16   determining whether evidence is relevant.").  Additionally, Plaintiff misrepresented the

17   facts when he asserted that the civil service commission ruled that his "application of

18   TPD's use of force policy was correct." (*See* Doc. 83 at 2.)  Nowhere in the commission's

19   eight-page decision did the commission determine that Plaintiff's application of the TPD's

20   use-of-force policy was correct.  (*See* Doc. 67-4 at 2-9.)  Instead, the commission ruled that

21   there "was not just cause for the disciplinary action imposed" on Officer Anaya.  (*Id*. at 9.)

22   Finally, it was *Plaintiff* and not Defendants who first raised the issue of whether Plaintiff's

23   application of the TPD's use-of-force policy was correct at trial.

24        At trial, Plaintiff was the first witness to raise the issue of his application of the

25   TPD's use-of-force policy.  Plaintiff testified that the OPS concluded that Officer Anaya's

26   use of force was outside of department policy.  Plaintiff then provided the entire factual

27   background of the Anaya shooting incident.  Plaintiff testified that he disagreed with OPS

28   investigation findings because OPS investigators failed to account for the totality-of-

- 23 -

circumstances standard.  Plaintiff testified that executive police officers were critical of his review of the OPS investigation because his findings "were aligned with past practices." Plaintiff commented that the civil service commission determined that the Anaya shooting was within policy and reinstated Anaya.

As such, Plaintiff's argument that he was prejudiced by the Court's ruling because "[t]he City should not have been permitted to inject the soundness of [his] interpretation [of the use-of-force policy] into the case," (*see* Doc. 150 at 17), is meritless and denied. The Court's ruling was also not erroneous because Plaintiff misrepresented the facts in bringing the motion and whether his application of the TPD's use-of-force policy was correct was irrelevant to the question of whether Plaintiff was retaliated against for his protected speech.

### B.    Agency Decision Not Entitled To Issue Preclusion

Additionally, assuming arguendo that the civil service commission hearing satisfies the *Utah Construction* fairness requirements, the commission's decision is not entitled to preclusive effect because Plaintiff fails to demonstrate that the issue at stake in Anaya's termination appeal was the same as the constitutional issues presented here in federal court. "Arizona has long recognized that when the second case is upon a different cause of action, the prior judgment or decree operates as an estoppel only as to matters actually in issue, or points controverted, upon the determination of which the judgment or decree was rendered." *Crosby*-Garbotz, 434 P.3d at 146 (cleaned up).  The issue decided by the civil service commission in the Anaya appeal was whether the City had just cause to terminate Anaya due to multiple alleged violations of TPD general orders.  (*See* Doc. 67-4 at 4-5.) That issue is not identical to whether the City and TPD executive officers unlawfully retaliated against Plaintiff for his alleged protected speech and whether the City denied Plaintiff adequate procedural protection by reassigning him.  (*See* Doc. 109 at 1.)  While Plaintiff testified at Anaya's employment appeal, the hearing had nothing to do with Plaintiff's performance or whether Plaintiff was unlawfully retaliated against for his protected speech.  (*See generally* Doc. 67-4 at 2-9.)  As such, issue preclusion does not

apply to the commission's decision, and Plaintiff's argument is denied.

## CONCLUSION

For the aforementioned reasons, Plaintiff's motion for new trial is denied.

Dated this 29th day of December, 2025.

Honorable Bruce G. Macdonald
United States Magistrate Judge